UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2019

---------------------------------------------------------------X
                      :

MICHELLE ROSADO,           :
                      :

                Plaintiff,    :

     -against-             :
                      :               No. 17-cv-00360 (NSR)
                      :               OPINION & ORDER
VILLAGE OF GOSHEN, RYAN W. RICH,   :
ROBERT NICHOLS, ROBERT FOLEY,    :
MICHAEL HOWARD, JILLIAN GUERERRA, :
MICHAEL CASTNER and JOHN FARELL.  :

               Defendants.   :
                      :
---------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

On or about January 18, 2017, *pro se* Plaintiff, Michelle Rosado ("Plaintiff" or "M. Roasdo"), commenced this action asserting 42 U.S.C. §1983 ("Section 1983") claims against several identified and unidentified federal and state law enforcement officials. (ECF No. 2.) On July 18, 2017, Plaintiff filed an Amended Complaint asserting claims against Defendants Village of Goshen, Sergeant Ryan W. Rich ("Sgt. Rich"), of the Village of Goshen Police Department, in his individual and official capacity, federal agents Michael Howard ('Howard"), Jillian Guererra ("Guererra"), Michael Castner ("Castner") and John Farrell ("Farrell") ( collectively referred to as the "Federal Defendants"), in their individual capacities, as well Robert Nichols ("Nichols") and Robert Foley ("Foley") in their individual capacities. (ECF No. 27.) Plaintiff asserts claims pursuant to Section 1983 for use of excessive force, and forcible seizure, and for municipal liability (commonly referred to as a *Monell* claim). Now before the Court are Defendants' motions to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). (ECF Nos. 79, 88 &

1

91.) Plaintiff did not file opposition papers, and thus, the motion is deemed unopposed. For the following reasons, Defendants' motions are is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are derived from the Amended Complaint, the operative complaint, and are assumed to be true for the purposes of this motion.

On June 28, 2016 at approximately 6 a.m. Plaintiff M. Rosado, was asleep in her home at 129 W. Main Street in the Village of Goshen, New York. (Am. Compl. ¶14.) Defendants Howard, Guerrera, Castner and Farrell, members of the Federal Bureau of Investigation's ("FBI") Hudson Valley Squad C-37 ("Hudson Valley Squad") entered the Plaintiff's residence while armed and wearing SWAT team gear. (Am. Compl. ¶ 15.) Defendant Robert Nichols, a member of the Lee County State Attorney's Office, and Robert Foley, another FBI agent[1], were present wearing plain clothes. (*Id.*) Plaintiff does not know if Nichols and Foley were armed. (*Id.*)

Surprised and in response to Defendants' shouts, the Plaintiff emerged from the bedroom and without warning or explanation, was met by Defendants Howard, Guerrera, Castner and John Farrell, with their weapons drawn and shining flashlights in Plaintiff's face. (Am. Compl. ¶16.) The Plaintiff was forced into the kitchen by the armed Defendants and her husband, Randal Rosado, was taken into custody and removed from the premises. (Am. Compl. ¶17.) After her husband's arrest, the Plaintiff was held in the apartment against her will and humiliated by the Defendants. (Am. Compl. ¶18.) Plaintiff further alleges that when she requested that she be permitted to change her clothing, she was forced to undress in the presence of the Defendants

---

[1] The Complaint states Foley is now a duly sworn member of the Lee County State Attorney's Office.

and when using the bathroom she was forced to leave the bathroom door open. *Id.* Plaintiff alleges that the Defendants did not provide the Plaintiff with an arrest or search warrant upon entering and remaining in her home. (Am. Compl. ¶19.) A search warrant was signed by Orange County Court Judge Robert H. Freehill ("Judge Freehill") several hours after Defendants entered and remained on the premises.[2] *Id.* Prior to Defendanats entering the home, Plaintiff and her husband were not engaged in any violent or threatening behavior. (Am. Compl. ¶20.) The Plaintiff alleges that Nichols and Foley forcibly removed her from home under duress and threat of being arrested and taken to the Village of Goshen Police Department for a forced interrogation. (Am. Compl. ¶22.)

During the interrogation, Nichols and Foley advised Plaintiff that they listened to her telephone calls for many months. (Am. Compl. ¶23.) Plaintiff alleges Nichols and Foley took her iPhone and purse, and forced her to provide the passcode to access the phone. (Am. Compl. ¶24.) Plaintiff alleges there was no warrant issued justifying the taking of her personal property. *Id.* Plaintiff was subsequently released and informed she could return home after 4 p.m., when the search of her apartment was completed. *Id.*

Without her phone, purse, wallet or the ability to drive, Plaintiff walked to a nearby eatery, Elsie's Luncheonette, in order to call her brother-in-law to ask for a ride out of the area. (Am. Compl. ¶25.) Plaintiff alleges that Nichols, Foley, Howard, Guerrera, Castner and Farrell were in the same luncheonette "apparently awaiting the judge to sign the search warrant." *Id.* While seated at a table waiting for her brother-in-law, Nichols approached, leaned in and whispered in Plaintiff's ear, "Who is Chris?," referring to the Plaintiff's brother-in-law. (Am.

---

[2] Although Plaintiff asserts that law enforcement officers obtained the search warrant sometime after entering her residence, she does not deny its existence and references the document in her complaint.

Compl. ¶26.) Plaintiff took that to mean that the defendants overheard her phone conversation and that Nichols was harassing her. *Id.*

The Plaintiff returned home and found the premises in a state of disarray. Plaintiff alleges that the Defendants left her deliberately vicious and nasty messages intended to harass, annoy, humiliate and cause her pain. Plaintiff. (Am. Compl. ¶28.) A copy of a search warrant and an FBI seized property list signed by Howard, file number 196D-TP-T310573, was left in her home. (Am. Compl. ¶27.) Plaintiff found photos of she and her husband together in their most special moments, such as wedding and honeymoon, left out in the open. (Am. Compl. ¶28.) In her bedroom on top of a pile of her belongings, Plaintiff discovered in open view items of a sexual nature, lingerie and a $20.00 bill on the bed to send a "degrading message." (Am. Compl. ¶29.) Plaintiff alleges Defendants removed an urn, containing her late mother's ashes from a box provided by the cremation company, used to safely maintain the item, and tossed it aside like a piece of trash. (Am. Compl. ¶30.) Plaintiff asserts these acts were intentionally meant to cause her mental anguish and emotional distress. *Id.*

Plaintiff alleges that despite the lack of a warrant and not being mentioned in any warrant, the Defendants entered her home, detained her, forcibly took her to the police station, and removed her property, which included a computer, iPhone, personal journal, bank debit card, safety deposit box key, birth certificate and other personal items. (Am. Compl. ¶¶31 -33.) Plaintiff alleges that Defendants Village of Goshen and Sgt. Rich, participated in the unlawful search and seizure of Plaintiff's home, person and property by allowing Nichols, Foley, Howard, Guerrera, Castner and Farrell to access to her home. (Am. Compl. ¶33.)

Finally, Plaintiff alleges that the Village of Goshen and Sgt. Rich instructed the Plaintiff to obtain details and documents concerning the arrest of her husband through the use of the

Freedom of Information Acts ("FOIA"). (Am. Compl. ¶35.)  Plaintiff attempted to obtain information and documents by making a FOIA request but was denied access to all of the requested documents and information. *Id.*

**LEGAL STANDARD**

**Rule 12(b)(6)**

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  In addition, although a court must interpret a *pro se* complaint liberally to "raise the strongest arguments that they suggest," the complaint must still "plead to relief that is plausible on its face." *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). "[T]he liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from

compliance with relevant rules of procedural and substantive law." *Ndremizara v. Swiss Re. Am. Holding Corp.*, 93 F.Supp.3d. 301, 309-10 (S.D.N.Y. 2015).

Generally, a court is confined to the facts alleged in the complaint or petition for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. See *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *D/S Norden A/S*, No. 16-cv-2274, 2017 WL 473913, at *2 (S.D.N.Y. Feb 3, 2017) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

**Rule 12(b)(1)**

The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to the standard for dismissal under 12(b)(6). *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). Under Rule 12(b)(1), "a case is properly dismissed for subject matter jurisdiction… when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion to dismiss, the court may refer to evidence outside the pleadings. *Id.* "The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In assessing whether there is subject matter jurisdiction, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Id.*

**Section 1983**

Section 1983 provides, in relevant part, that:"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

**Fourth Amendment**

      **Excessive Force**

The Fourth Amendment "'prohibits the use of unreasonable and therefore excessive force by a police officer' in the course of an arrest." *Graham v. N.Y.C.*, 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). "When excessive force is alleged, a court must determine 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). When determining whether excessive force was used against a plaintiff, a court considers the totality of the circumstances. *Tracy*, 623 F.3d at 96. In doing so, a court looks to: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with 20/20 vison of hindsight." *Graham*, 490 U.S. at 396.

"[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" as officers must use some degree of force when arresting an individual. *Id.* (internal citation omitted). "Instead, the forced used by the law enforcement officer must generally be more than de minimis for a claim to be actionable." *Antic v. N.Y.C.*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d. Cir. 1993)). "De minimis injury can serve as conclusive evidence that de minimis force

was used." *Washpon v. Parr et. al*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (quoting *Carr v. Deeds*, 453 F.3d 593, 606 (4th Cir. 2006)).

It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages pursuant to Section 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); see also *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973) ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.").  Personal involvement of a defendant may include that the defendant participated directly in the alleged constitutional violation,  the defendant, after being informed of the violation failed to remedy the wrong,  the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,  the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or the defendant exhibited deliberate indifference to the rights of victim by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal citations omitted)).

### Search and Seizure

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The general contours of a search and seizure under the Fourth Amendment are well-defined.  A search occurs when "'the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016)

(quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A "search" also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information. *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (S.D.N.Y. 2014). A seizure includes arrest and occurs when, considering all of the circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave. *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992). The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness. *Riley v. California*, 573 U.S. 373, 381-82 (2014). The reasonableness standard invokes a "'careful balancing of governmental and private interests.'" *Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992)).

Typically, a search or seizure is not reasonable unless it is conducted pursuant to a warrant issued upon probable cause. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989). The issuance of a warrant by a neutral judge, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Warrantless searches may be reasonable in special circumstances, but "must still generally be based upon probable cause." *Nicholas v. Goord*, 430 F.3d 652, 660 (2d Cir. 2005). A warrantless arrest is unreasonable unless the arresting officer has probable cause to believe that the arrestee is committing or has committed a crime. *United States v. Delossantos*, 536 F.3d 115, 158 (2d Cir. 2008). "Probable cause exists where the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).

***Monell* Claim**

A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vi11age of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); see also *Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

***Biven's* Claim**

Under *Bivens* and its progeny, federal courts can hear suits for money damages against federal government officials accused of violating constitutional rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66

(2001) ("In *Bivens* ... we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) ("In [*Bivens*], this Court held that the victim of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit for money damages against the officers in federal court."); *Carlson v. Green*, 446 U.S. 14, 18–19 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").

"'*Bivens* actions are not significantly dissimilar to claims brought under [42 U.S.C.] §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted and the defenses which may be asserted.'" *Chin v. Bowen*, 833 F.2d 21, 23–24 (2d Cir.1987). "Because the two actions share the same 'practicalities of litigation,' federal courts have typically incorporated § 1983 law into *Bivens* actions." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (citation omitted). Like § 1983 claims, Bivens actions preclude vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Hence, to prevail on a *Bivens* claim, a plaintiff must plead that there was a violation of a clearly established constitutional right and that a defendant was personally involved in the alleged wrong.

While *Bivens* allows a private right of action under the Fourth Amendment, the Supreme Court has extended *Bivens* to the Fifth Amendment's Due Process Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause. *Davis v. Passman*, 442 U.S. 228 (1979) (extending *Bivens* to the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (extending

*Bivens* to the Eight Amendment). Beyond those amendments, the Supreme Court has instructed courts to take a "cautious" approach and not accept *Bivens* claims in new contexts. *Ziglar v. Abbasi*, 582 U.S ___, 137 S. Ct. 1843 (2017) ("expanding the *Bivens* remedy is now considered a "disfavored" judicial activity.").

**Qualified Immunity**

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The immunity protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986)).

**DISCUSSION**

**Excessive Force Claims**

Plaintiff alleges that the Defendants used excessive force against her when, in the course of executing the warrant, officers : (1) displayed their firearms and shined their flashlights; (2) forcibly detained her in her kitchen during and after her husband's arrest,  and while the search

was being conducted; (3) forced her to undress in the presence of law enforcement officials ; (4) forced her to leave the bathroom door open while using the toilet; and (5) intimidated and removed from her home, under duress and threat of arrest.  Notably, in her Amended Complaint, Plaintiff references and acknowledges the existence of the search warrant and does not attack its validity. The search warrant was issued on June 29, 2016, and authorizes law enforcement personnel to conduct the search between the hours of 6:00 a.m. and 9:00 p.m.

Before, analyzing Plaintiff's excessive force claims against the other named law enforcement officials, the Court notes Plaintiff fails to plead facts that allege Defendant Sgt. Rich was involved in any of the excessive force incidents. The Amended Complaint does not allege that Defendant Rich participated in the arrest of Plaintiff's husband, her detention, her questioning or the search of her home. In fact, Plaintiff alleges that Defendant Rich failed to be present during the search. A "complaint based upon a violation of § 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 182 (S.D.N.Y. 2017) (quoting *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 696 (S.D.N.Y. 2016)).  In light of Defendant Rich's absence from the alleged incidents giving rise to Plaintiff's claims of excessive force, any claim asserted against Defendant Rich for use of excessive force must be dismissed.

As previously mentioned, the Fourth Amendment protects individuals against unreasonable searches and seizures of their persons and property. U.S. Const. amend. IV. "All claims that law enforcement officials have used excessive force –deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard …" *Graham v. Connor*, 490 U.S. 386, 395 (1989); see also *Riley v. California*, 573 U.S. 373, 381-82 (2014).  The reasonableness of an

officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."(*Graham*, 90 U.S. at 395 (quoting *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

While we have empathy for any person who feels intimidated, threatened, daunted and/or scared when police enter their home to search and make an arrest pursuant to the execution of a warrant, police simply cannot be held liable for hurting someone's feelings or making them feel intimidated. It is a well-established rule that police officers may "take reasonable action to secure the premises" in the context of executing a search warrant. *Los Angele County, California v. Rettele*, 550 U.S. 609, 614 (1989) (recognizing that police officers are entitled to take reasonable steps to secure the premises and ensure their own safety while executing a search warrant). Police executing a search warrant are privileged to detain individuals, even to the point of handcuffing them, while the search is carried out. *Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." (internal citations omitted).

In addition, the Supreme Court's Fourth Amendment jurisprudence allows for law enforcement officers to perform "a protective sweep" of a residence while they are making an arrest, as well as after the arrest. *Maryland v. Buie*, 494 U.S. 325, 334-336(1990). Officers in the course of executing a search or arrest warrant may temporarily seize bystanders or those not the target of the warrant but at the scene. See, e.g., *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391 (S.D.N.Y. 2009) (dismissing plaintiff's seizure claims as unreasonable when police handcuffed family-members while searching an apartment that turned out to be at the wrong address). In that same vein, the Supreme Court has further reasoned that courts should not look at

the motives of an individual officer in deciding whether they acted in an objectively reasonable manner. *Graham*, 490 U.S. at 397-398 ("An office's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

42 U.S.C. §1983, "does not provide a remedy for every common law tort and a suit based on that statute cannot be sustained merely on the basis of verbal abuse." *Williams v. Pecchio*, 543 F.Supp. 878, 879 (W.D.N.Y. July 15, 1982). "'… mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *Id*. at 879-880 (quoting *Coyle v. Hughs*, 436 F.Supp. 591 (W.D.Okl. 1977)). Similarly, courts have "long recognized [that] the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." See *Terry v. Ohio*, 392 U.S. at 22–27); see also, *Pelt v. City of New York*, No. 11–CV–5633, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) (threats of force, including threat to use force to arrest does not amount to excessive force). Plaintiff may have suffered threats or intimidation in what is typically a tense situation, but it does not rise to the level of excessive force where liability would attach against the Defendants. Accordingly, any claim premised on the display of firearms, use of a flashlight,[3] use of verbal threats, temporary detention, use of the bathroom[4] and dressing in the presence of law enforcement officers during the execution of the search warrant fails to assert a plausible claim and must be dismissed.

---

[3] The shining of a flashlight in a plaintiff's face does not give rise to a Section1893 claim. See, *Higginbotham v. City of Pleasant Grove*, 2013 WL 5519577, at *39 (N.D. Ala. September 30, 2013).
[4] Plaintiff failed to raise a plausible 1983 claim when police officers entered the residence while she was in the shower and detained her there until after the security sweep was completed. *Crosby v. Hare*, 932 F. Supp. 490, 495 (W.D.N.Y. 1996)

**Search and Seizure Claims**

Plaintiff's alleges that Nichols and Foley forcibly removed her from her home by use of threats of arrest and detained her at the Goshen Police facility for questioning. Defendants assert that Plaintiff's allegations are legally insufficient and contradicts a sworn statement which pre-dates the commencement of this action. [5] (ECF N0. 89, Memorandum in Support of Motion to Dismiss.) In a July 6, 2016 affidavit, Plaintiff avers that she was "forced out of the apartment in order for them [the police] to do the search" and "was then told to go to the police station" where she was put through a torturous interrogation. (ECF No. 90, Lee Decl. Ex. 1.) Defendants request that the Court take judicial notice of Plaintiff's affidavit for the purpose of discrediting Plaintiff's allegations.

When deciding a Rule 12(b)(6) motion, the court may consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. See *Kleinman v. Elan Corp.*, 706 F.3d at 152; *D/S Norden A/S*, 2017 WL 473913, at *2 (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d at 111). Courts have taken judicial notice of documents such as media reports, state court complaints, and regulatory filings for the purpose of establishing that the matters had been publicly asserted but not for the "truth of the matters asserted in them." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008). Courts may also consider documents not incorporated by reference in the complaint but which are relied "'heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*,

---

[5] Plaintiff's affidavit, dated July 7, 2016, is attached to the complaint to Plaintiff's husband's complaint in the action entitled *Rosado v. Bondi*, No. 16-cv-6916 (S.D.N.Y.).

282 F.3d 147, 153 (2d Cir. 2002) (internal citations omitted); *Frigerio v. United States*, No. 10 CIV. 9086, 2011 WL 3163330 *6 (S.D.N.Y. July 22, 2011).

While Defendants are correct that Plaintiff's affidavit contradicts the allegations in the Amended Complaint, use of the affidavit for the purpose of deciding the instant motion is impermissible. The document is not incorporated by reference, not relied upon for terms and effect rendering it integral to the amended complaint, is not a public record, and is not of the nature upon which a court may take judicial notice. Defendants' sole purpose in requesting that the Court consider Plaintiff's affidavit is for assessing the truthfulness of Plaintiff's allegations in her complaint.

Use of an extrinsic document, such as a party or witness affidavit, is more appropriately considered in a Rule 56 summary judgment motion. Generally, a district court has discretion to convert a Rule 12(b)(6) motion into a Rule 56 summary judgment motion provided the court gives sufficient notice to the parties. *Kopec v. Coughlin*, 922 F.2d 152, 155–56 (2d Cir. 1991). No such notice has been provided her. The notice requirement may be excused when the parties have been given "a reasonable opportunity to present all material made pertinent" to such Rule 56 motion." *In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985). The essential inquiry is whether the parties should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. *Id.* at 295. Based on the procedural background of this case, conversion of the motion to one for summary judgment could not have been anticipated. Accordingly, conversion of the motion from a Rule 12(b)(6) to a Rule 56 is impermissible.

The use of physical force during an interrogation has been found to be constitutionally impermissible. *Cox v. Cty. of Suffolk*, 780 F. Supp. 103, 109 (E.D.N.Y. 1991) (citing *Ware v. Reed*, 709 F.2d 345, 351 (5th Cir.1983)). Plaintiff's assertion, however, that she was subjected to a "forced interrogation," "forced to provide the passcode," absent more is insufficient. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not" defeat a motion to dismiss. *Iqbal*, 550 U.S. at 678 (internal citations omitted); see also *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d. Cir. 2014). Bare "naked assertions devoid of further factual enhancement" cannot survive a Rule 12 (b)(6) motion to dismiss. *Id*. Plaintiff's allegation that she was forcibly interrogated and forced to hand over her passwords are merely conclusory lacking in sufficient details to support a plausible claim.

Plaintiff has, however, asserted a plausible claim against Nichols and Foley for false imprisonment under the Fourth Amendment. The Fourth Amendment protects individuals from "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons or things to be seized." U.S. Const. Am. IV. A "seizure" occurs when by means of physical force or a show of authority a person's freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). The seizure must be view in the light of "all the circumstances surrounding the incident" such that "a reasonable person would have believed that he was not free to leave." *Id.*; *INS v. Delgado*, 466 U.S. 210, 215 (1984).

The elements of a Fourth Amendment claim for false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Probable cause to arrest

19

constitutes a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted)). The touchstone of a seizure is the restraint of an individual's personal liberty "in some way." *California v. Hodari D.*, 499 U.S. 621, 637 (1991) (internal citation omitted). Factors suggesting that a seizure, lacking in consent, may include: the threatening presence of police officers; the display of a weapon; physical contact by the officer; language indicating that compliance with the officer is compulsory; prolonged retention of a person's belongings; and a request by an officer to accompany him or her to the police station or a police room. *Gardiner v. Inc. Vill. of Endicott*, 50 F.3d 151, 155 (2d Cir.1995) (citing *United States v. Lee*, 916 F.2d 814, 819 (2d Cir.1990)). The threat of arrest alone by law enforcement officials when ignoring such threat is impossible has been deemed a seizure. See *Bennett v. Town of Riverhead*, 940 F. Supp. 481, 487 (E.D.N.Y. 1996)

Interpreting *pro se* Plaintiff's complaint liberally and giving her allegations every favorable inference, Plaintiff has pled a plausible claim under the Fourth Amendment for false imprisonment. The allegations provide that multiple law enforcement officers displayed weapons, Plaintiff was detained in her home while the search warrant was executed, her husband was removed and taken into custody, Plaintiff's movement was restrained, Plaintiff did not consent to journey to Goshen Police facility, and Nicholas and Foley instructed that if she failed to voluntarily go she would be arrested. Under the circumstances presented, a reasonable person would not have believed they were free to leave and not comply with the officers' instructions.

Plaintiff alleges that Nichols and Foley confiscated her phone and purse. In the her amended Complaint, Plaintiff references the search warrant and seized property list. In a Rule 12(b)(6) motion the court may consider any referenced documents. *Kleinman v. Elan Corp.*, 706 F.3d at 152. The seized property list clearly indicates that Plaintiff purse, along with its contents, was seized during the execution of the warrant. Accordingly, any allegations that Plaintiff purse and its contents were forcible taken must be dismissed.

### *Monell* Claim

To the extent Plaintiff has attempted to assert a *Monell* claim against the Village of Goshen, the claim fails as a matter of law.[6] A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. *Monell* does not create an independent cause of action against a municipality but rather extends liability caused by public officials' conduct to the municipality because its policy or practice led to the underlying violation. *Id.* (involving a policy that was "the moving force of the constitutional violation"); see also *City of Canton v. Harris*, 489 U.S. 378 (1989) (involving a failure to train municipal employees that led to the constitutional injury). Hence, to find the Village of Goshen under *Monell*, there be an underlying constitutional violation and an official policy, practice or custom of the City or Village, such as a failure to adequately train police officers. See *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) Here, the Complaint fails to identify an official policy, practice or custom of the Village of Goshen. A mere assertion that the Village of Goshen failed to adequately train and/or supervise its employees is insufficient to state a *Monell* claim. *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d

---

[6] The Goshen Police Department is merely administrative arms of a municipal corporation, and does not have a legal identity separate and apart from the city or town. See, *Brockport v. County of Monroe Pure Waters Div.*, 75 A.D.2d 483, 486 (4th Dep't 1980), aff'd, 54 N.Y.2d 678 (1981); *Belinson v. Sewer District No. 16 of the Town of Amherst*, 65 A.D.2d 912 (4th Dep't 1978). Accordingly, any claims asserted against the Goshen Police Department must be dismissed.

688, 705 (S.D.N.Y.1999). Accordingly, Plaintiff's claim against the Village of Goshen must be dismissed.

### Qualified Immunity

Defendants assert, to the extent any Section 1983 claim survives, they are entitled to qualified immunity. As previously discussed, qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions. *Lennon v. Miller*, 66 F.3d at 420. Government actors performing discretionary functions are shielded provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). The immunity protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. at 641). Defendants Nichols and Foley are not entitled to qualified immunity. It is clearly established law that officers may not arrest and detain citizens absent probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (citing; *Hayes v. Florida*, 470 U.S. 811, 815 (1985)). Accordingly, Plaintiff allegations support a showing that Defendants' conduct was objectionably unreasonable.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Amended Complaint is GRANTED in part and DENIED in part. All claims asserted against Defendants the Village of Goshen, Sergeant Ryan W. Rich, Michael Howard, Jillian Guererra, Michael Castner and John Farrell are dismissed. All claims against Robert Nichols and Robert Foley for use of excessive force are dismissed. Defendants' motion to dismiss Plaintiff's claim under the Fourth Amendment for false imprisonment is denied. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 79, 88 and 91, to mail a copy of this Opinion and Order to Plaintiff and to show proof of service on the docket. The remaining Defendants Nichols and Foley are directed to file an answer within twenty five days of this Opinion. The parties are directed to confer, complete and submit a case management plan (blank form attached hereto) within two weeks of filing the answer(s).

Dated: March 27, 2019                                SO ORDERED:
      White Plains, New York

                                                  NELSON S. ROMÁN
                                     United States District Judge

Rev. Jan. 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                Plaintiff(s),

      - against -

                                Defendant(s).
-------------------------------------------------------------x

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.   All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.   This case [is] [is not] to be tried to a jury.

3.   Joinder of additional parties must be accomplished by _____.

4.   Amended pleadings may be filed until _____.

5.   Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.   First request for production of documents, if any, shall be served no later than _____.

7.   Non-expert depositions shall be completed by _____.

    a.   Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.   Depositions shall proceed concurrently.

    c.   Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than

    _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY**

    _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

_____


_____
Nelson S. Román, U.S. District Judge